[Cite as *In re J.W.*, 2011-Ohio-3744.]

STATE OF OHIO          )                    IN THE COURT OF APPEALS
                       )ss:                 NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN       )

IN RE: J. W.                                C.A. No.      10CA009939


                                            APPEAL FROM JUDGMENT
                                            ENTERED IN THE
                                            COURT OF COMMON PLEAS
                                            JUVENILE DIVISION
                                            COUNTY OF LORAIN, OHIO
                                            CASE No.      09 JD 28295


DECISION AND JOURNAL ENTRY

Dated: August 1, 2011


DICKINSON, Judge.

## INTRODUCTION

{¶1}    Fourteen-year-old J.W. allegedly made nine-year-old T.W. touch his penis and put it in his mouth and, also, allegedly, touched T.W.'s penis. Following a hearing before a magistrate, the juvenile court adjudicated J.W. a delinquent child for committing rape and gross sexual imposition. J.W. has appealed, assigning as error that the juvenile court incorrectly refused to let him examine T.W.'s mental health records, that his adjudication is against the manifest weight of the evidence, and that the court failed to properly review the magistrate's decision. We affirm because J.W. did not have the right to participate in the magistrate's in camera review of T.W.'s mental health records, his adjudication is not against the manifest weight of the evidence, and the juvenile court correctly reviewed the magistrate's findings of fact and conclusions of law.

## FACTS

**{¶2}** T.W. is the youngest of three brothers. All three live with their mother, but go to their grandparents' house after school. J.W. lives down the street from the grandparents' house and often played with the boys. Although J.W. is closer in age to T.W.'s brothers, he most often played with T.W. Two of their favorite activities were to play video games in J.W.'s bedroom and bounce on a trampoline in the grandparents' backyard.

**{¶3}** According to T.W., one day in the spring of 2008, he had just beaten J.W. at a video game when J.W. began talking to him in a strange voice. J.W. told him to put his hand down the front of J.W.'s pants and touch J.W.'s penis. T.W. complied. J.W. then put his hand down T.W.'s pants and touched him. Next, J.W. pulled his pants down and told T.W. to put his penis in his mouth. T.W. did so for about a minute, and then suggested that the two of them go jump on the trampoline. While on the trampoline, J.W. unzipped his pants and told T.W. to touch his penis again. T.W. complied, but he stopped when T.W.'s grandfather called him to come into the house for dinner.

**{¶4}** T.W. did not tell his mother about the incidents until almost a year later. At the time, T.W. was in therapy for obsessive compulsive disorder. T.W.'s mother told the therapist about the incidents, but the therapist recommended that they wait a couple months to tell the police until T.W. was on medication for anxiety. According to the detective who investigated T.W.'s allegations, J.W. admitted there were incidents between T.W. and him in his bedroom and on the trampoline, but said it was T.W. who had tried to touch him. At the adjudication hearing, J.W. also testified that it was T.W. who tried to initiate sexual contact with him, but that he had pushed his hand away each time because it was not appropriate.

{¶5}   A magistrate found T.W.'s testimony credible and J.W.'s testimony not credible and recommended that J.W. be adjudicated delinquent.  J.W. objected to the magistrate's decision, but the juvenile court overruled his objections.  It found J.W. to be a delinquent child and placed him on community control.  J.W. has assigned three errors on appeal.

MENTAL HEALTH RECORDS

{¶6}   J.W.'s first assignment of error is that the juvenile court violated his right to due process when it denied his motion to review T.W.'s mental health records.  Before the adjudicatory hearing, J.W. moved for the release of T.W.'s mental health records, arguing that, in light of T.W.'s delay in reporting J.W.'s alleged conduct to the police, the records might contain information that would help his defense.  In particular, he argued that the records might help him challenge J.W.'s veracity and determine whether the therapist used improper or suggestive methods while counseling T.W.  The magistrate subpoenaed the records from T.W.'s therapist and reviewed them in camera.  Determining that nothing in the records would be material to J.W.'s defense, the magistrate denied his motion.

{¶7}   To determine whether the records should be released, the magistrate applied *State v. McGovern*, 6th Dist. No. E-08-066, 2010-Ohio-1361.  In *McGovern*, the Sixth District noted that the United States Supreme Court has held that a defendant's right to a fair trial "entitle[s] the defendant to an in camera review by the trial court of . . . confidential records in order to determine whether the records contain evidence material to the accused's defense." *Id*. at ¶28 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61 (1987)).  Following several other districts, it held that "[t]he proper procedure in determining the availability of confidential records is for the trial court to conduct an in camera inspection to determine:  (1) whether the records are necessary and relevant to the pending action; (2) whether good cause has been shown by the

person seeking disclosure; and (3) whether their admission outweighs the confidentiality considerations." *Id.*

{¶8} J.W. has not argued that it was incorrect for the magistrate to have relied on *McGovern*, recognizing that he had himself relied on the case in his motion. He also specifically suggested in his motion that "[t]he [c]ourt could order [T.W.'s mental health] documents be produced [i]n [c]amera[.]" J.W.'s argument, instead, is that the magistrate should have allowed his lawyer to participate in the in camera inspection, similar to the procedure for out-of-court witness statements under Former Rule 16(B)(1)(g) of the Ohio Rules of Criminal Procedure. According to J.W., unless a juvenile's lawyer is allowed to participate in the inspection, he can not tell the magistrate why certain documents are "necessary and relevant" or why there is "good cause" for their disclosure. *State v. McGovern*, 6th Dist. No. E-08-066, 2010-Ohio-1361, at ¶28. He has argued that the magistrate's failure to allow his lawyer to participate in the review violated his due process rights, particularly his right to counsel.

{¶9} Initially, we note that, in his motion, J.W. suggested that the magistrate could review T.W.'s medical records in camera and did not ask to participate in the inspection. An "in camera inspection" means "[a] trial judge's private consideration of evidence" and does not contemplate participation by the parties. Black's Law Dictionary 775 (8th Ed. 2004). Accordingly, any error by the juvenile court appears to have been invited by J.W. *State ex rel. Bitter v. Missig*, 72 Ohio St. 3d 249, 254 (1995) ("Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."). Nevertheless, we will address the merits of J.W.'s argument.

{¶10} In *In re C.S.*, 115 Ohio St. 3d 267, 2007-Ohio-4919, the Ohio Supreme Court held that a juvenile's right to due process "is not a technical conception with a fixed concept unrelated

to time, place, and circumstances," but "expresses the requirement of 'fundamental fairness[.]'" *Id*. at 80 (quoting *Lassiter v. Dep't of Social Servs. of Durham County, N. C.*, 452 U.S. 18, 24-25 (1981)). The Ohio Supreme Court noted that "[a]pplying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id*. (quoting *Lassiter*, 452 U.S. at 24-25). "A court's task is to ascertain what process is due in a given case . . . while being true to the core concept of due process in a juvenile case—to ensure orderliness and fairness." *Id*. at ¶81.

**{¶11}** In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the State's protective service agency investigated allegations that Mr. Ritchie had committed various sexual offenses against his minor daughter. Mr. Ritchie subpoenaed the agency's investigation records, but the agency refused to produce them, arguing they were confidential. The trial court refused to order the agency to produce the records, but the Pennsylvania Supreme Court reversed, holding that the denial violated Mr. Ritchie's right to confrontation and compulsory process. The United States Supreme Court granted certiorari.

**{¶12}** A majority of the justices were unable to agree on whether the agency's failure to disclose the records implicated Mr. Ritchie's right to confrontation. A majority did agree, however, that the decision affected his right to compulsory process. Noting that it had traditionally analyzed a defendant's right to compulsory process under the Due Process Clause and that its precedent on the fundamental fairness of trials provided a clear framework for review, it adopted a due process analysis for purposes of the case. *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987).

{¶13} The Supreme Court noted that the government has an obligation to turn over materials that are favorable to a defendant and material to guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). But it also acknowledged the State's interest in the confidentially of its investigative records. While the Supreme Court agreed that the State had a strong interest in protecting the sensitive information contained in the records, it noted that the State's confidentially law contained exceptions, leading it to conclude that the Pennsylvania legislature had "contemplated some use of [the agency's] records in judicial proceedings." *Id.* at 58. It did not, however, require the agency to give Mr. Ritchie unsupervised access to files because that "could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse." *Id.* at 60. Weighing Mr. Ritchie's right to due process against the State's confidentiality interests, it concluded that Mr. Ritchie's "interest . . . in ensuring a fair trial can be protected fully by requiring that the [agency] files be submitted only to the trial court for *in camera* review." *Id.* "Although this rule denies [Mr.] Ritchie the benefits of an 'advocate's eye,' we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file . . . , he is free to request it directly from the court, and argue in favor of its materiality." *Id.*

{¶14} This case involves an accused's right to due process, similar to *Ritchie*. Unlike that case, it involves mental health records of a licensed therapist instead of investigative records of a child protective services agency. There is little substantive difference, however, because T.W.'s mental health records are confidential under state law, just like the records at issue in *Ritchie*. See R.C. 2317.02(B)(1) & (G)(1); R.C. 4732.19. The purpose of Ohio's confidentiality laws is to encourage mental and physical health by allowing patients to speak candidly with their health care providers without fear that the matters will later become public. See *Ward v. Summa*

*Health Sys.*, 128 Ohio St. 3d 212, 2010-Ohio-6275, at ¶24. As in *Ritchie*, the confidentiality of the documents is subject to certain statutory exceptions. Accordingly, we are faced with circumstances very similar to *Ritchie*.

{¶15} The United States Supreme Court determined that the way to balance a defendant's right to due process with the State's interest in confidentiality is to allow the trial court to review the records in camera to determine whether they contain any favorable, material evidence. *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987). The Supreme Court specifically rejected the notion that the defendant could participate in the review. *Id.* Mr. Ritchie has not persuaded us that his right to the disclosure of T.W.'s mental health records is stronger than was Mr. Ritchie's right to protective service agency records or that the State of Ohio's interest in patient confidentiality is any less important than Pennsylvania's interest in investigating child abuse. He has also failed to convince us that an in camera review of T.W.'s mental health records fails to protect his rights. We note that he has not cited any precedent in which a court has allowed a defendant to participate in an in camera review, outside of the context of Rule 16 of the Ohio Rules of Criminal Procedure, under which it is expressly allowed. Crim. R. 16(F).

{¶16} The magistrate and juvenile court reviewed T.W.'s records and determined that they did not contain anything that was material and favorable to J.W.'s defense. We also have reviewed the records and conclude that their decision was correct. J.W.'s first assignment of error is overruled.

MANIFEST WEIGHT

{¶17} J.W.'s second assignment of error is that the juvenile court's delinquency adjudication is against the manifest weight of the evidence. Because juvenile adjudications are characterized as civil in nature, the Ohio Supreme Court has applied the civil manifest weight of

the evidence standard. *In re Sekulich*, 65 Ohio St. 2d 13, 16 (1981) ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."). Recognizing the similarities between a delinquency adjudication and a criminal conviction, however, this Court has applied the criminal manifest weight of the evidence standard. *In re M.H.*, 9th Dist. No. 09CA0028, 2009-Ohio-6911, at ¶11-12; *In re R.D.U.*, 9th Dist. No. 24225, 2008-Ohio-6131, at ¶5-6. Under that standard, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶18} J.W. has argued that T.W.'s testimony was unbelievable for several reasons. He has noted that other children testified that T.W. had lied to them about having had sex with one of his teachers. T.W. also incorrectly interpreted an innocent act by a child with whom he was wrestling as "dry hump[ing]." And T.W. made up a story about having to jump out a window at a friend's house to escape from J.W. and a couple of Rottweilers. J.W. has also argued that T.W.'s grandfather, who testified that J.W. appeared to zip up his pants after the incident on the trampoline, always disliked him. He has further argued that T.W.'s mother repeatedly told T.W. that, if he ever said that someone had improperly touched him, she would believe him completely.

{¶19} Regarding the wrestling incident, the only testimony about it was by T.W.'s mother, who said that it allegedly happened while the children were playing in the dark and that she doubted that the other child, who was not J.W., had any type of sexual intent. Regarding

T.W.'s story about his teacher, even if he told such a story to other children, it was reasonable for the magistrate and juvenile court to determine that it had no affect on his credibility regarding what J.W. allegedly did to him. T.W. did not discuss his sexual conduct with J.W. with other children, and J.W. admitted that there was an incident involving an attempt at sexual touching between the two of them.

{¶20} Regarding T.W.'s escape story, T.W. testified that several months after the incidents in J.W.'s bedroom and on the trampoline, he was at his grandparent's house again when he decided to visit his friend J.E., whose family was moving that day. He said that, when he got to J.E.'s house, J.W. was there. J.W. gave him a kiss, then picked him up and carried him into the house. T.W. did not want to be around J.W. so he tried to leave the house, but J.W. was near the front door and there were a couple of Rottweilers outside the back door and they scared him. He testified that he explained the situation to J.E., who told him that he could leave through one of the windows. J.E. testified that, although she saw T.W. outside on the day her family moved, he did not enter her house or leave it through a window. She also testified that it would have been impossible for him to have seen any dogs at her house that day because her father had already taken them so that they would not be in the way while her family packed. She further testified that there were childproof locks on the windows of the house.

{¶21} J.E. testified that she had dated J.W., so the magistrate could have considered her biased. We have reviewed the record and conclude that the magistrate did not lose her way when she determined that T.W. was credible and that J.W. was not. J.W.'s second assignment of error is overruled.

JUVENILE RULE 40(D)

**{¶22}** J.W.'s third assignment of error is that the juvenile court incorrectly failed to undertake an independent review of the matters he objected to before determining whether the magistrate had properly determined the facts and appropriately applied the law. Under Rule 40(D)(4)(d) of the Ohio Rule of Juvenile Procedure, "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

**{¶23}** Under Juvenile Rule 40(D)(4)(d), "[i]t is the primary duty of the court, and not the referee, to act as a judicial officer." *Normandy Place Assocs. v. Beyer*, 2 Ohio St. 3d 102, 105 (1982) (referring to identical requirement under Rule 53(D)(4)(d) of the Ohio Rules of Civil Procedure). "In order for the trial court to maintain its independence, it is of utmost importance that it carefully examine any report before it for errors. Accordingly, we reject any concept which would suggest that a trial court may in any way abdicate its function as judge over its own acts. . . . [T]he trial court has the responsibility to critically review and verify to its own satisfaction the correctness of such a report." *Id.* The Supreme Court has cautioned trial courts "against the practice of adopting referee's reports as a matter of course, especially where a referee has presided over an entire trial." *Hartt v. Munobe*, 67 Ohio St. 3d 3, 6 (1993).

**{¶24}** Although a juvenile court has a duty to independently review the evidence, it may give deference to the magistrate's credibility findings. "[If] a magistrate comments on credibility and the trial court does not take additional evidence . . . 'the judgment of the magistrate on issues of credibility is, absent other evidence, the last word on the issue for all practical purposes.'"

*Mandelbaum v. Mandelbaum*, 2d Dist. No. 21817, 2007-Ohio-6138, at ¶103 (quoting *Quick v. Kwiatkowski*, 2d Dist. No. 18620, 2001 WL 871406 at *4 (Aug. 3, 2001); see also *MacConnell v. Nellis*, 2d Dist. No. 19924, 2004-Ohio-170, at ¶16 n.1 (indicating that a trial court does not improperly defer to the magistrate where it gives "some deference to the magistrate's credibility determinations," but also independently considers the evidence before it). As explained in *Desantis v. Soller*, 70 Ohio App. 3d 226, 233 (1990), "[t]he trial court, when considering a referee's report, may have little, if any, greater advantage in determining the credibility of the witnesses than this court would upon review of the trial court's decision. The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness."

{¶25} J.W. has argued that the juvenile court did not comply with Juvenile Rule 40(D) because it cited *Seasons Coal Co. Inc. v. City of Cleveland*, 10 Ohio St. 3d 77 (1984), for the idea that "[d]eference should be given to the trier of fact in the determination of the weight and importance of the evidence." According to J.W., the court gave the magistrate's decision more deference than allowed under Juvenile Rule 40(D).

{¶26} On its face, the sentence citing *Seasons Coal* appears to give the magistrate too much deference. A trial court is not allowed to defer to the magistrate in determining the weight and importance of evidence. See Juv. R. 40(D)(4)(d) (providing that the court must "undertake an independent review . . . to ascertain that the magistrate has properly determined the factual issues"). We must consider the sentence, however, in the context of the entire paragraph in which it appears. The juvenile court wrote: "'The demeanor of the witnesses, the timing of the responses and facial expressions are matters bearing on credibility and observable by the trier of

fact but not a reviewing court.' *State v. Ely* (1978), 56 Ohio St.2d 169. 'Deference should be given to the trier of fact in the determination of the weight and importance of the evidence.' *Seasons Coal Co., Inc. v. City of Cleveland.* Thus, the court will not disturb the Magistrate's findings as to the witnesses' credibility or lack thereof."

**{¶27}** Although the juvenile court's sentence citing *Seasons Coal* appears to give the magistrate's decision too much deference regarding the weight of the evidence, the rest of the paragraph shows that the only deference the court actually gave the magistrate was in his determination of the witnesses' credibility, which was proper. *Quick v. Kwiatkowski*, 2d Dist. No. 18620, 2001 WL 871406 at *4 (Aug. 3, 2001). Because the outcome of this case depended on whether T.W. was credible, the juvenile court's adoption of the magistrate's credibility finding led, necessarily, to its determination that J.W. was a delinquent child. We conclude that J.W. has failed to show that the court gave improper deference to the magistrate's findings of fact and conclusions of law. J.W.'s third assignment of error is overruled.

## CONCLUSION

**{¶28}** J.W. did not have a due process right to have his lawyer participate in the in camera review of T.W.'s mental health records. The juvenile court properly reviewed the magistrate's decisions and its delinquency adjudication is not against the manifest weight of the evidence. The judgment of the Lorain County Common Pleas Court, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, J.
CONCURS

BELFANCE, P.J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶29} With respect to the majority's resolution of the first assignment of error, I concur in its judgment. J.W. requested an in camera inspection of the records without requesting that his counsel be involved in that inspection. Thus, I agree that any error by the court in failing to involve J.W.'s counsel was invited by J.W., and therefore, J.W.'s argument is properly overruled. Accordingly, I find the remainder of the analysis involving the first assignment of error to be unnecessary.

APPEARANCES:

HOLLACE B. WEIZEL, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and ERIN K. MEYER, Assistant Prosecuting Attorney, for Appellee.