[Cite as *State v. Hull*, 2015-Ohio-4001.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| STATE OF OHIO | C.A. No. 14AP0025 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KEVIN HULL | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. CRB-13-10-01834 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2015

MOORE, Judge.

{¶1}   Defendant-Appellant Kevin Hull appeals from the judgment of conviction entered by the Wayne County Municipal Court.  We affirm in part, and reverse in part.

I.

{¶2}   Mr. Hull rented a house in Doylestown.  He kept three dogs there, two larger black dogs, and a smaller white dog.  The dogs had free access to the house and to a fenced-in area outside.  On August 27, 2013, Ms. Candace Beam, who leased an adjacent horse barn, called the Wayne County Humane Society ("Humane Society") to report that the dogs were "emaciated."  Ultimately, the Humane Society removed the dogs from the property.

{¶3}   A six-count complaint was filed against Mr. Hull, three counts for abandonment of animals in violation of R.C. 959.01, and three counts for prohibitions concerning companion animals in violation of former R.C. 959.131(C)(2).  The matter proceeded to a bench trial, after which the trial court found him guilty of all counts.  The trial court sentenced Mr. Hull to 2 years

of probation, fined him $50 for each count, ordered him to pay $3,045.71 in restitution, and required him to perform 100 hours of community service. Additionally, the trial court prohibited Mr. Hull from owning or caring for animals while on probation. Mr. Hull has appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

MR. HULL'S CONVICTIONS FOR PROHIBITIONS CONCERNING A COMPANION ANIMAL UNDER R.C. 959.131(C)(2) ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Mr. Hull asserts in his first assignment of error that his convictions for violating R.C. 959.131(C)(2) are based on insufficient evidence and are against the manifest weight of the evidence. We do not agree.

Sufficiency

{¶5} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} First, Mr. Hull essentially argues that he was convicted of violating the current version of R.C. 959.131(C)(2) and not the version in effect at the time of the offense. He asserts that the current version of R.C. 959.131(C)(2) "prohibits a person who confines or is the custodian or caretaker of a companion animal from negligently omitting 'any act of care by

which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, whe[n] there is a reasonable remedy or relief[,] against the companion animal.'" He further argues that there is no evidence that the dogs suffered unjustifiable or unnecessary pain or suffering, and, thus, his assignment of error should be sustained.

{¶7} While it is true that the current version of R.C. 959.131(C)(2) does prohibit the above behavior, at the time of the offense, August 27, 2013, the former version of R.C. 959.131 was in effect. Former R.C. 959.131(C)(2), states:

> No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:
>
> * * *
>
> Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners.

{¶8} The language in the complaint mirrors the language in former R.C. 959.131(C)(2) and the testimony at trial was focused on the dogs' access to food and water. Given Mr. Hull's limited argument on this issue, and his failure to cite any relevant authority that would suggest he was convicted of violating the current version of the statute, *see* App.R. 16(A)(7), he has not convinced us that the current version is applicable to this case. Accordingly, we will proceed to analyze whether there was sufficient evidence that Mr. Hull violated former R.C. 959.131(C)(2).

{¶9} Pursuant to Former R.C. 2901.22(D),

> [a] person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.

A companion animal includes any dog. *See* R.C. 959.131(A)(1).

{¶10} Mr. Hull argues that the evidence does not support that all three dogs were deprived of wholesome amounts of food and water because: (1) no one knew whether there was food or water available inside the house; (2) no one knew whether the dogs received food or water outside when the humane agents were not present, (3) there was insufficient evidence that the smaller white dog was underfed; and (4) two of the dogs initially lost weight after being seized by the Humane Society.

{¶11} On August 27, 2013, Ms. Beam noticed from "quite a distance" that one of Mr. Hull's dogs "d[id]n't look right[.]" From the testimony, it appears the dog that initially caused her concern was the smaller white dog. She proceeded closer to the fenced-in area and then saw all three dogs and was "horrified[.]" She testified that the dogs appeared "severely emaciated and underfed[,]" and that "you could count every joint, every bone, * * * they were like a walking skeleton with skin stretched over them essentially." She did not see any food or water in the enclosure. There were bowls for food and water present, but they were empty. She acknowledged that, although she did not know when the bowls were last filled, it did not look like the dogs were being fed or cared for at the time. When she called the Humane Society she told "them that they needed to come immediately because [she] didn't believe the dogs would make it for any more days; they were that emaciated."

{¶12} Ms. Beam testified that she did not know when the dogs became emaciated. She had not seen them for some time prior to August 27, 2013, but recalled that, prior to that date, the dogs appeared cared for and "completely healthy and normal[.]" She had heard that Mr. Hull was being evicted and had seen him at the property on more than one occasion loading up his

truck and leaving. However, the property was still being maintained and a few days earlier Mr. Hull had mowed the lawn.

{¶13} Officer Diane Hudson, the Wayne County Dog Warden and a Humane Society agent, responded to Ms. Beam's call on August 27, 2013. She attempted to make contact with the owner, but no one was home. She did, however, speak with Mr. Hull's landlord, who indicated that he was in the process of evicting Mr. Hull. Officer Hudson observed the three dogs in the fenced-in area and described them as "emaciated[, v]ery thin." With respect to the two larger black dogs, she testified that she could "see their ribs, their back bone, their hip bones were prominent." With respect to the smaller white dog, Officer Hudson averred that, "you could see her ribs[, and s]he had a skin issue on the back." Officer Hudson gave the dogs a gallon of water "and they eagerly drank all of that." She did not have any food with her, but did have some treats. She had to put the treats over the fence, "because they were starting to fight trying to get the treats from [her]." The dogs were even trying to fight when she gave them water. Officer Hudson left a 24-hour notice requesting Mr. Hull to contact her. Additionally, she took photographs of the dogs.[1]

{¶14} After 24 hours passed with no response from Mr. Hull, Officer Hudson returned to the property with another person. At that time, there was again no food or water in the bowls. She provided the dogs with two gallons of water and a small bag of dog food, which they consumed within minutes. Officer Hudson acknowledged that she did not know if the dogs had access to food or water in the house or if they had been given food or water in the bowls prior to

---

[1] Photographs were admitted into evidence as Exhibits A-D. However, while there are various photographs in the record, they do not appear to match the description and labeling discussed at trial.

her arrival at the house on the days she visited. Nonetheless, she testified that, based on her observations of the dogs, it did not appear that they were being fed a wholesome amount of food.

{¶15} On August 29, 2013, with permission from Mr. Hull's landlord, the dogs were removed from the property. Photographs were taken of them at that time as well and an impound notice was left on the door for Mr. Hull. Mr. Hull's landlord reported to Officer Hudson on August 30, 2013, that the impound notice was no longer on the door; however, Mr. Hull never contacted the Humane Society. The dogs were taken to the Humane Society and a veterinarian confirmed that the dogs were underweight. Over the course of the dogs' stay at the Humane Society, the dogs did gain weight, although two of them did initially lose weight.

{¶16} Stewart Mykrantz, the Executive Director of the Humane Society and a dog warden and humane agent, monitored the care of the dogs while they were at the Humane Society. He testified that the dog in the most concerning condition was the larger black dog. Initially upon intake at the Humane Society, that dog was not eating or drinking and required intravenous fluids and antibiotics. Until the dog started improving, he was concerned "that [they] might lose that dog."

{¶17} Based upon our review of the record, we conclude the State presented sufficient evidence, when viewed in a light most favorable to the prosecution, whereby a trier of fact could find Mr. Hull guilty of violating former R.C. 959.131(C)(2) with respect to each dog. A trier of fact could reasonably conclude from the evidence that the dogs collectively were not being provided "sufficient quantities of good, wholesome food and water[.]" *See* former R.C. 959.131(C)(2). When the dogs were given treats and watered by Officer Hudson on August 27, 2013, they tried to fight over the rations. A trier of fact hearing that evidence could infer that the dogs were extremely hungry. The dogs were collectively described by both Ms. Beam and

Officer Hudson as being emaciated. Rib bones were visible on all of the dogs and the back bones could be observed on the two larger black dogs. Ms. Beam noticed that something was wrong with one of the dogs from "quite a distance[.]" Additionally, there was testimony that a veterinarian confirmed that the dogs were underweight. The evidence that two of the dogs initially lost a small amount of weight after they were seized does not negate the testimony that they were emaciated prior to being seized. The larger black dog even required intravenous fluids and antibiotics, and there was a concern that that dog might die from his condition. Finally, Ms. Beam testified that when she previously saw the dogs prior to August 27, 2013, they appeared healthy and well-cared for. Thus, there was evidence that the condition of the dogs on August 27, 2013, was not their normal condition. Given the above description of the dogs' condition and behavior from August 27, 2013 to August 29, 2013, a trier of fact could reasonably infer that the dogs did not have access to food or water in the house, or in the fenced-in area when the humane agents were not present, despite the fact that there was no direct evidence to that effect offered at trial. Circumstantial evidence, including the absence of food and water outside on the occasions that Officer Hudson visited, could support the conclusion that the dogs were not being fed or watered.

{¶18} In light of Mr. Hull's arguments on appeal, we conclude the State presented sufficient evidence to find him guilty of three counts of violating former R.C. 959.131(C)(2). Mr. Hull's argument is overruled.

Manifest Weight

{¶19} Mr. Hull also argues that his convictions for violating former R.C. 959.131(C)(2) are against the manifest weight of the evidence.

**{¶20}** When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶21}** We note that Mr. Hull has not identified which portions of his argument relate to sufficiency and which relate to manifest weight. Most of his arguments appear to be directed towards the sufficiency of the evidence, which we have addressed above. To the extent Mr. Hull argues his convictions are against the manifest of the evidence, we are not persuaded.

**{¶22}** The trier of fact was able to listen to the testimony of the witnesses and view the photographs of the dogs. The condition and behavior of the dogs, as well as the lack of food and water at the time of Officer Hudson's visits, provided circumstantial evidence that the dogs did not have access to food and water absent it being provided by the humane agents. The dogs were collectively described by both Ms. Beam and Officer Hudson as being emaciated and there was no testimony that would even suggest that any of the three dogs was in a healthy condition or at a healthy weight. We remain mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 17. After thoroughly and independently reviewing the record, we cannot say that the trial court lost its way in finding Mr. Hull guilty of three counts of violating former R.C. 959.131(C)(2).

**{¶23}** Mr. Hull's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

MR. HULL'S CONVICTIONS FOR ABANDONING AN ANIMAL UNDER R.C. 959.01 ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NO EVIDENCE OF COMPLETE ABANDONMENT.

**{¶24}** Mr. Hull asserts in his second assignment of error that his convictions for violating R.C. 959.01 are not supported by sufficient evidence and are against the manifest weight of the evidence.

Sufficiency

**{¶25}** Mr. Hull's argument as to this assignment of error is limited to his contention that the evidence is insufficient to establish that he abandoned the dogs in light of the manner in which the term "abandoned" has been defined in the case law. We agree.

**{¶26}** The complaint contained three counts alleging that Mr. Hull violated R.C. 959.01 on or about August 27, 2013. R.C. 959.01 provides that "[n]o owner or keeper of a dog, cat, or other domestic animal, shall abandon such animal." Unfortunately, "abandon" is not defined in the statute and there is little case law examining the statute at issue. In an unrelated civil context, this Court has concluded that abandonment as contemplated by R.C. 959.01 "will not be presumed but requires affirmative proof of a person's intent to totally discard the property." *Carver v. Szefcyk,* 9th Dist. Lorain No. 4354, 1988 WL 114455, *2 (Oct. 26, 1988), citing *Kiser v. Bd. of Commrs. of Logan Cty.,* 85 Ohio St. 129 (1911).

**{¶27}** Here, even viewing the evidence in a light most favorable to the State, we cannot say that there was sufficient evidence of "affirmative proof" that on or about August 27, 2013, Mr. Hull intended "to totally discard the [dogs]." *Carver* at *2.

**{¶28}** It is true that Mr. Hull was not home when Officer Hudson visited the property and that Mr. Hull did not make contact with her or return her call as requested. Officer Hudson

testified that she received Mr. Hull's contact number from Mr. Hull's landlord; however, when she called the number she was only able to reach Mr. Hull's cousin, with whom she left a message to have Mr. Hull call her. Mr. Hull did not call her back. Further, there was evidence that Mr. Hull's landlord was in the process of evicting Mr. Hull and that he was seen on more than one occasion prior to August 27, 2013, loading his truck with items and leaving. As discussed above, there was also evidence that the dogs were not being sufficiently fed and watered and that they were emaciated.

{¶29} Nonetheless, there was also evidence that Mr. Hull had not yet been evicted from the property. Officer Hudson testified that, to her knowledge, August 27, 2013, was not the last day of Mr. Hull's three-day eviction notice, and Ms. Beam believed that as of August 27, 2013, Mr. Hull still lived at the property. When Officer Hudson spoke to Mr. Hull's landlord on August 30, 2013, after the dogs were removed, the landlord indicated that the impound notice left on August 29, 2013 had been removed and that he had had Mr. Hull's telephone service turned off. Further, there was testimony that Mr. Hull was still mowing the lawn a few days prior to August 27, 2013, and that the property was being otherwise maintained. Moreover, when Officer Hudson returned to the property on August 28, 2013, she noticed that a bike was missing and a bag of clothes was sitting on a small table in front of the house that was not there the day before.

{¶30} After reviewing all of the evidence in a light most favorable to the State, we cannot conclude there is sufficient evidence constituting "affirmative proof" that on or about August 27, 2013, Mr. Hull intended "to totally discard the [dogs]." *Carver,* 1988 WL 114455, at *2. While the dogs were not being cared for, they were still being kept in an enclosed space on property rented by Mr. Hull. Moreover, on or about August 27, 2013, Mr. Hull was not yet

evicted from that property and there was evidence that someone was returning to the property during the relevant time frame. Thus, we cannot say that a reasonable trier of fact could conclude from the evidence that Mr. Hull abandoned the dogs on or about August 27, 2013.

{¶31} In light of the foregoing, we conclude that the State failed to present sufficient evidence to support the findings of guilt with respect to the three counts of violating R.C. 959.01. The matter is remanded to the trial court to enter judgments of acquittal as to these three counts.

Manifest Weight

{¶32} As Mr. Hull's convictions for violating R.C. 959.01 are based on insufficient evidence, his argument concerning the manifest weight of the evidence is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

{¶33} Mr. Hull's second assignment of error is sustained to the extent he asserts his convictions for violating R.C. 959.01 were based upon insufficient evidence.

III.

{¶34} Mr. Hull's first assignment of error is overruled and his second assignment of error is sustained to the extent he asserts there was insufficient evidence to find him guilty of violating R.C. 959.01. The judgment of the Wayne County Municipal Court is affirmed in part, reversed in part, and the matter is remanded for the trial court to enter judgments of acquittal as to the three counts of violating R.C. 959.01.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


CARLA MOORE
FOR THE COURT


CARR, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.