[Cite as *In re T.A.*, 2020-Ohio-3613.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: T.A.

C.A. No.    19CA0025-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2018 06 DQ 0163

DECISION AND JOURNAL ENTRY

Dated: July 6, 2020

TEODOSIO, Presiding Judge.

{¶1} Appellant, T.A., appeals from the judgment of the Medina County Court of Common Pleas, Juvenile Division, adjudicating him delinquent for committing gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(4). This Court affirms.

I.

{¶2} The 9-year-old victim ("K.M.") in this matter lived in a Medina apartment with her mother, her siblings, and T.A.'s father. In April of 2018, 13-year-old T.A. was visiting his father for the weekend and slept overnight at the apartment. The children all slept in the living room downstairs while the adults slept in an upstairs bedroom. According to K.M., she woke up in the middle of the night with her shorts pulled down while T.A. was touching her buttocks and pulling her closer to him. K.M. got up and sat on the couch for a minute, but the incident bothered her, so she went upstairs and told her mother. After T.A. would not answer the mother's questions, and she was unsatisfied with his father's response, she called the police.

{¶3} The State filed a complaint alleging that T.A. was a delinquent child for committing GSI. Following an adjudicatory hearing, a magistrate adjudicated T.A. to be a delinquent child. T.A. timely filed objections to the magistrate's decision and requested findings of fact and conclusions of law. The magistrate then filed its findings of fact and conclusions of law. The juvenile court held a hearing on the objections, denied the objections, adopted the magistrate's decision, and adjudicated T.A. a delinquent child. At the disposition hearing, the court committed T.A. to the Ohio Department of Youth Services in a secure facility for an indefinite term consisting of a minimum of six months and a maximum period not to exceed his 21st birthday. The court suspended the sentence, however, and placed T.A. on indefinite probation with various terms and conditions.

{¶4} T.A. now appeals from the judgment of the juvenile court and raises two assignments of error for this Court's review. Because T.A. chose to consolidate and argue his assignments of error together in his merit brief, we have likewise consolidated the assignments of error and will address them together.

## II.

### ASSIGNMENT OF ERROR ONE

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JUVENILE COURT'S FINDING AND ADJUDICATION OF DELINQUENCY-GROSS SEXUAL IMPOSITION.

### ASSIGNMENT OF ERROR TWO

APPELLANT'S ADJUDICATION FOR DELINQUENCY-GROSS SEXUAL IMPOSITION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶5}** In his assignments of error, T.A. argues that his delinquency adjudication was not based on sufficient evidence and was against the manifest weight of the evidence. We disagree with both propositions.

**{¶6}** The matter before us is an appeal from the trial court's judgment overruling T.A.'s objections to the magistrate's decision, adopting the magistrate's decision, and adjudicating him a delinquent child. In reviewing T.A.'s objections below, the juvenile court conducted an independent review of the record pursuant to Juv.R. 40(D)(4)(d). This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *In re L.W.*, 9th Dist. Summit No. 24632, 2009-Ohio-5543, ¶ 16. "Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable—not merely an error of law or judgment." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶7}** In so doing, however, we consider the trial court's action with reference to the nature of the underlying matter. *Id.* at ¶ 17, citing *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. "Although juvenile delinquency cases are technically civil in nature, this Court applies the same sufficiency and manifest weight standards of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the 'inherently criminal aspects' of delinquency proceedings * * *." *In re L.F.*, 9th Dist. Lorain No. 10CA09880, 2012-Ohio-302, ¶ 6, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6. "A challenge to the sufficiency of the evidence concerns the State's burden of production, while a challenge to the manifest weight of the evidence concerns the State's burden of persuasion." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶8} Whether an adjudication of delinquency is supported by sufficient evidence is a question of law, which this Court reviews de novo. *See Thompkins* at 386.

> An appellate court's function when reviewing the sufficiency of the evidence to support [an adjudication of delinquency] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶9} Weight of the evidence concerns whether the greater amount of credible evidence produced at trial supports one side over the other side. *Thompkins* at 387. When reviewing a manifest weight challenge,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶10} T.A. was adjudicated a delinquent child for violating R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender

knows the age of that person." "Sexual contact" includes "any touching of an erogenous zone of another, including without limitation the * * * buttock * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose can be established by circumstantial evidence and may be ascertained from the surrounding facts and circumstances of the case." *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996). A trier of fact may infer a purpose of sexual arousal or gratification from the type, nature, and circumstances of the contact, along with the personality of the defendant. *See State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-1523, ¶ 16.

{¶11} We first note that T.A. has not identified which portions of his argument relate to sufficiency and which relate to manifest weight. *See, e.g., State v. Hull*, 9th Dist. Wayne No. 14AP0025, 2015-Ohio-4001, ¶ 21. Upon review, it appears T.A.'s sufficiency argument is limited to simply offering a list of things he claims K.M. did not testify to or could not answer at trial; e.g., he claims she did not understand a question about whether T.A. sleeping over made her feel uncomfortable, she did not recall what time she fell asleep, she did not know how her pants came to be pulled down, she did not immediately tell her mother, she watched a video on her tablet after telling her mother, and she "lacked any specific detail" when testifying as to the incident. We cannot agree with T.A. that these arguments demonstrate his delinquency adjudication was not supported by sufficient evidence.

{¶12} K.M. was only 9 years old on April 29, 2018. She testified that she slept on the living room floor next to both her sister and T.A. that night, while T.A's sister slept on the couch.

She testified that she was awakened in the middle of the night by T.A. "touching [her] butt and bringing [her] closer to him." Her shorts were "down halfway[,]" but she had not pulled them down herself. She got up and sat on the couch for "like a minute," but "it bothered [her]," so she went upstairs to tell her mother.

{¶13} Her mother also testified at the hearing that K.M. woke her up that morning "[h]ysterically crying." When she asked what was wrong, K.M. explained that "she woke up with * * * her shorts at her knees and [T.A.] was rubbing her butt cheeks and breathing in her ear." T.A.'s father then went downstairs while K.M.'s mother comforted her and gave her a tablet to watch videos. Once she was able to calm K.M. down, the mother went downstairs to speak to T.A. She testified that T.A. was on the couch and would not look at her. When she asked him about the incident, he told her, "That's just weird. That's just weird." When she asked him where he was and what was going on, T.A. said, "I was on the floor. I was on the couch." Believing he was not answering her questions honestly, she turned around and left the room in anger. She told T.A.'s father that he had to take his son and get out. She testified that, after the incident, K.M. did not eat for a couple days and missed some school. K.M. now sleeps in her mother's bed seven days a week and wakes up crying in the middle of the night. She is scared to play basketball now, especially when there are older boys around, and she has to see a counselor.

{¶14} After reviewing the evidence presented in a light most favorable to the prosecution, we determine that the State presented sufficient evidence, if believed, to demonstrate that T.A. purposely engaged in sexual contact with K.M. when he touched her buttocks. K.M. testified that she woke up with her shorts pulled down and T.A. touching her buttocks, and the testimony of the victim in sex offense cases, if believed, is sufficient to support a delinquency adjudication, even without further corroboration. *See State v. Martucci*, 9th Dist. Summit No. 28888, 2018-Ohio-

3471, ¶ 16.  It can also be inferred from the surrounding circumstances that T.A. touched K.M. for the purpose of sexual arousal or gratification, as her shorts were pulled down in the middle of the night while she was asleep and T.A. was touching her buttocks and pulling her closer.  A minute later, K.M. went upstairs and told her mother what happened while hysterically crying.  K.M. was only 9 years old at the time of the incident, and the parties stipulated for purposes of the record that T.A. and K.M. were not married to each other.  We therefore conclude that a rational trier of fact could have found all the elements of GSI proven beyond a reasonable doubt.

{¶15}  Turning now to T.A.'s manifest weight argument, he challenges K.M.'s credibility and claims she had a "reputation for untruthfulness" because her mother admitted K.M. has told lies in the past to get what she wants and T.A.'s sister testified that K.M. would lie to get others in trouble, including T.A.  He further argues there were inconsistencies in the trial testimony because both K.M. and her mother claimed the children got along together, while T.A. and his sister claimed they did not.  He argues that the testimony also differed as to whether the tablet was located upstairs or downstairs.  Finally, T.A. argues that both K.M. and her mother had a motive to make false allegations against him because (1) T.A.'s sister testified that she saw K.M. patting T.A.'s buttocks while he was asleep and told her to stop, and (2) T.A. found marijuana in the mother's apartment before the underlying incident allegedly occurred.

{¶16}  T.A.'s 11-year-old sister testified that she did not get along with K.M. and they would fight a lot.  She referred to K.M. as both "annoying" and a "crybaby," and testified that K.M. lied about her in the past and tried to get her in trouble.  She recalled seeing K.M. "patting [T.A.'s] butt" after he fell asleep that night and telling K.M. to stop.  Still, T.A.'s sister admitted she was asleep during the alleged incident later that night when T.A. was touching K.M.  She admitted she does not get along with K.M.'s mother and claimed the mother treats both her and

T.A. like they are not part of the family, as if they are "nothing, basically." She testified that she believes K.M.'s mother does not want her and T.A. around because they are always fighting with her own children, who are "always complaining" and "always telling."

{¶17} T.A. also testified on his own behalf at the hearing. He referred to K.M. as "spoiled" and a "crybaby." He testified that she has lied about him in the past, but neglected to provide any details. He testified that, on the night of the incident, his sister fell asleep first. He denied K.M.'s allegations that he touched her, and claimed that she instead woke him up when she got up and moved to the couch. According to T.A., K.M. was on the couch for five seconds before she went upstairs. T.A. then moved to the couch because his hip was hurting. His dad soon came downstairs and asked what was wrong with him, so T.A. told him what happened. He testified that he could not recall what K.M.'s mother said when she came downstairs to talk to him, but she did not ask him any questions or accuse him of anything. Yet, he recalled responding to her comments with, "Why would I do that? That's weird" and "Dad, can we get a lawyer?" T.A. also testified that he does not get along with K.M.'s mother. He claimed K.M.'s mother is aware that, one year before this alleged GSI, he was looking for candy and found some "stuff" in her apartment, including a razor blade and some crack cocaine on a plate in the top of her closet and some marijuana in a tin on her dresser. He admitted that the mother's children were unaware of his discovery. He did not testify as to how he could identify these items as illicit drugs or how he confirmed they belonged to K.M.'s mother.

{¶18} We find no merit in T.A.'s argument that his delinquency adjudication was against the manifest weight of the evidence. The magistrate was presented with conflicting stories at trial as to whether T.A. woke K.M. up that night by touching her buttocks and pulling her closer while her shorts were pulled down. She was free to find K.M. to be a competent, credible witness, and

free to find T.A. to be not credible, as the trier of fact is free to believe all, part, or none of the testimony of each witness. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24 (involving a jury as trier of fact); *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 (involving a jury as trier of fact). The magistrate was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Taylor*, 9th Dist. Summit No. 29058, 2019-Ohio-3253, ¶ 15 (involving a jury as trier of fact). "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The magistrate could further reasonably infer from the circumstances that T.A.'s act of touching K.M.'s buttocks was done to achieve sexual arousal or gratification. *See In re T.A.F.*, 9th Dist. Medina No. 09CA0046-M, 2010-Ohio-3000, ¶ 32. The magistrate was aware of the non-specific testimony that K.M., a 9-year-old girl, has lied sometime in the past, and was able to consider it when weighing her credibility. The magistrate was also aware of the conflicting testimony as to whether the children typically got along and whether the tablet was located upstairs or downstairs that night. She was free to give little or no weight to T.A.'s sister's testimony that she saw K.M. patting T.A.'s buttocks while he was asleep, especially in light of T.A.'s own testimony that his sister was the first one to fall asleep that night. The magistrate was also free to give little or no weight to T.A.'s self-serving allegation that he found drugs in the mother's apartment one year earlier, which supposedly gave the mother and the *unaware* K.M. some type of motive to lie about T.A. and make false allegations against him. "This Court has consistently held that '[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events

over another version.'" *Taylor* at ¶ 15, quoting *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶19} In reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the magistrate, in resolving any conflicts in the evidence, clearly lost her way and created a manifest miscarriage of justice in adjudicating T.A. delinquent for committing GSI. *See Otten* at 340. T.A. has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against delinquency adjudication. *See Thompkins* at 387. Accordingly, the juvenile court did not err in overruling T.A.'s objections, adopting the magistrate's decision, and adjudicating T.A. delinquent because the magistrate's decision was supported by sufficient evidence and was not against the manifest weight of the evidence. *See In re T.A.F.* at ¶ 32, citing *Blakemore*, 5 Ohio St.3d at 219; *In re E.A.*, 9th Dist. Summit No. 28106, 2016-Ohio-7281, ¶ 13.

{¶20} T.A.'s first and second assignments of error are overruled.

III.

{¶21} T.A.'s first and second assignments of error are both overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶22} I concur in the majority's resolution of the first assignment of error because the evidence at trial, when viewed in the light favorable to the State, would be sufficient to sustain T.A.'s adjudication.

{¶23} I respectfully dissent in regard to the majority's resolution of the second assignment of error. The credibility determinations in this matter were pivotal as there were legitimate questions as to the reliability of the testimony of several key witnesses, most notably the alleged victim. While a juvenile court may give deference to a magistrate's credibility findings, the court has a duty to independently review the evidence underpinning the magistrate's decision. *In re J.W.*, 9th Dist. Lorain No. 10CA009939, 2011-Ohio-3744, ¶ 24. In this case, T.A. raised witness credibility issues in his objections. T.A. specifically argued that the alleged victim's account of

the incident was "inconsistent" and "incomplete." In response, the trial court simply stated that it "[would] not disturb the Magistrate's findings of credibility" because the trier of fact was in the best position to resolve any issues in that regard. The trial court further noted that it was the right of the trier of fact to place significant weight on the testimony of the alleged victim. The trial court did not directly respond to the issues raised by T.A.

{¶24} Furthermore, the scope of this Court's review should be limited to the trial court's action on a magistrate's decision. *See Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 17. Although the trial court did not undertake a substantive review of the credibility concerns, I would refrain from undertaking a direct review of the magistrate's decision. Given that the trial court did not address the credibility issues raised in T.A.'s objections, I would reverse and remand for the trial court to resolve these credibility challenges in the first instance.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and KORY J. WIITA, Assistant Prosecuting Attorney, for Appellee.