[Cite as *State v. Samamra*, 2025-Ohio-126.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    23CA012026 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALAA SAMAMRA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    21CR105496 |

DECISION AND JOURNAL ENTRY

Dated: January 21, 2025

STEVENSON, Presiding Judge.

{¶1}   Appellant Alaa Samamra appeals from the judgment of the Lorain County Common Pleas Court that found him guilty on two counts of sexual battery in violation of R.C. 2907.03(A)(2) and two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A).  For the reasons set forth below, this Court affirms.

I.

{¶2}   In November 2021, Mr. Samamra was indicted by the Lorain County Grand Jury on two counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree, two counts of sexual battery in violation of R.C. 2907.03(A)(2), felonies of the third degree, and two counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), felonies of the third degree.  Mr. Samamra pleaded not guilty, and the matter proceeded to a jury trial in June 2023.

{¶3}   At the close of the State's case-in-chief, Mr. Samamra moved for a Crim.R. 29 judgment of acquittal on all counts of the indictment which the trial court denied.  He renewed his

Crim.R. 29 motion at the conclusion of his own case-in-chief which the trial court again denied. The jury found Mr. Samamra not guilty on the two counts of rape, guilty on both counts of sexual battery, and guilty on the two counts of unlawful sexual conduct with a minor.

{¶4} Mr. Samamra moved for a post-verdict judgment of acquittal and for a new trial. Following a hearing, the trial court denied both motions and the matter proceeded to sentencing. Mr. Samamra was sentenced to 12 months in prison on each of the four counts to be served concurrently and was advised of his post-release control and Tier II sex offender duties.

{¶5} Mr. Samamra timely appealed and asserts five assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL UNDER CRIM.R. 29 BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO ESTABLISH BEYOND A REASONABLE DOUBT THE ELEMENTS NECESSARY TO SUPPORT THE CONVICTIONS.**

{¶6} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function . . . is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

**{¶7}** As a threshold matter, we note that Mr. Samamra's argument sounds largely in manifest weight of the evidence, comparing the testimony of the witnesses and attacking credibility. Under *Jenks*, we are tasked with reviewing the evidence in the light most favorable to the State and are not charged with evaluating credibility. We will address Mr. Samamra's manifest weight argument in our analysis under the second assignment of error.

### Sexual Battery

**{¶8}** Mr. Samamra was convicted of violating R.C. 2907.03(A)(2). R.C. 2907.03(A)(2) prohibits sexual battery and provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when …. [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

**{¶9}** R.C. 2901.22(B) states in relevant part that "[a] person acts knowingly, regardless of his purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

**{¶10}** "Substantial impairment" is not defined for purposes of this statute. However, in *State v. Jordan*, 2023-Ohio-3800, ¶ 22, the Supreme Court of Ohio defined these terms as follows:

> "Substantially" has been defined as "in a substantial manner" or "so as to be substantial." Webster's Third New International Dictionary 2280 (2002). To better understand these definitions, we examine the word "substantial," which means "constituting substance" or "not seeming or imaginary." *Id*. "Impaired" means "to make worse" or "diminish in quantity, value, excellence, or strength." *Id*. at 1131.

**{¶11}** Prior to *Jordan*, this Court gave the following guidance in determining whether an individual is substantially impaired in the context of intoxication:

> With respect to R.C. 2907.01(A)(1)(c), this Court has recognized that voluntary intoxication is a mental or physical condition that could cause substantial impairment. Nonetheless, this Court agrees that "[e]very alcohol consumption does not lead to a substantial impairment." In addition, we cannot say that every instance

of intoxication equates with substantial impairment. "[W]hen reviewing substantial impairment due to voluntary intoxication, there can be a fine, fuzzy, and subjective line between intoxication and impairment." "Additionally, the waters become even murkier when reviewing whether the defendant knew, or should have known, that someone was impaired rather than merely intoxicated."

(Internal citations and quotations omitted.) *State v. Hansing*, 2019-Ohio-739, ¶ 14 (9th Dist.).

**{¶12}** In order to prove sexual battery under R.C. 2907.03(A)(2), the State must establish both that the accuser was substantially impaired *and* that the offender knew or had cause to reasonably believe the accuser was substantially impaired. *State v. Rivera*, 2012-Ohio-2060, ¶ 20 (8th Dist.); *State v. Doss*, 2008-Ohio-449, ¶ 25 (8th Dist.). Mr. Samamra argues that the State failed to present sufficient evidence that the victim, M.Y., was substantially impaired and that he knew or had cause to reasonably believe M.Y. was substantially impaired. He does not contest the other elements of the offense.

**{¶13}** The victim in this case is M.Y. M.Y. testified that in June 2021, she went to her cousin G.B.'s high school graduation party. M.Y. was 13 years old at the time. The party took place at the home of G.B.'s mother, R.H. Mr. Samamra was R.H.'s boyfriend and lived at the home with R.H. Mr. Samamra was 25 years old at the time of the party. Mr. Samamra was told that G.B.'s classmates and friends would be in attendance. Mr. Samamra and M.Y. had never met prior to the party.

**{¶14}** M.Y. testified that during the party she consumed two White Claw brand alcoholic beverages. She further testified that later in the evening, while she was in the kitchen with Mr. Samamra and another woman, Mr. Samamra gave her six shots of a lemonade-flavored alcoholic beverage. M.Y. and Mr. Samamra stayed in the kitchen and discussed food and Palestine, Mr. Samamra's native country. At the same time, R.H., Mr. Samamra's girlfriend, was sleeping in the living room next to the kitchen. M.Y. testified that at that point she was "hammered," "didn't

know what was going on around [her]," and had texted her friend G.M. that she was "super drunk," and "could barely even, like, function. . . . "

{¶15} According to M.Y., Mr. Samamra eventually left the kitchen, then came back in and kissed her. He then took M.Y. into a bedroom, took off her leggings, and performed oral sex on her for three or four minutes. Afterwards, Mr. Samamra left the room for about 10 minutes because he thought he heard R.H. stirring, then returned to the bedroom. Mr. Samamra again performed oral sex on M.Y. and also engaged in vaginal intercourse with her. M.Y. testified that while this was happening, she was "too scared to. . . get up[,]" and "didn't know what to really do" because "you don't really know how to react especially if you're intoxicated." Mr. Samamra left the bedroom and did not return. He went to the garage where other guests were present.

{¶16} G.B. testified that after searching for M.Y., she eventually found her in the bedroom. G.B. stated that M.Y. was slurring her words, seemed frantic, begged G.B. not to leave, and kept mentioning G.B.'s mother's boyfriend. She further testified that M.Y. "seemed like she was -- she was drunk" and G.B. had to help her into the bathroom. G.B. testified that "I had to support her the whole way" into the bathroom and that "I couldn't get her on the toilet seat. She was that, like, wobbly and I had to put her in the tub." L.E., an adult guest at the party, entered the room, learned what happened, and instructed someone to call the police. L.E. also summoned R.H. to the room.

{¶17} Sergeant Christopher Alten of the Amherst Police Department arrived and observed M.Y. to be "highly intoxicated" with "bloodshot eyes" and "slurred speech." He also smelled "a strong odor of alcohol coming from her breath . . . ." M.Y. was transported by ambulance to a medical facility for a sexual assault exam. She told the nurse who examined her that she was "drunk as f ***[.]"

{¶18} Mr. Samamra argues that the State's case for substantial impairment is insufficient because it was based on M.Y.'s voluntary consumption of alcohol, standing alone, and that although M.Y. had consumed alcohol, under *Hansing*, *supra*, that is not sufficient to demonstrate substantial impairment absent other indicia. Mr. Samamra states further and alternatively there is no evidence in the record from which a reasonable trier of fact could conclude that he knew or had reasonable cause to believe M.Y.'s ability to appraise the nature of or control her conduct was diminished. He claims the evidence shows M.Y. never appeared drunk or impaired at any point during the night. We disagree.

{¶19} Evidence was presented that M.Y. drank eight alcoholic beverages in a relatively short period of time. M.Y. described herself at the time of her interaction with Mr. Samamra as so intoxicated that she didn't know what was going on, could barely function, and did not know how to react because of her level of intoxication. Her friend G.B. and Sergeant Alten corroborated this testimony. G.B. characterized M.Y. as drunk, slurring her speech, and needing help getting to the bathroom. Sergeant Alten labeled M.Y. as "highly intoxicated" with "bloodshot eyes," "slurred speech[,]" and emanating an odor of alcohol. M.Y. told the nurse who conducted the sexual assault exam that she was "drunk as f ***[.]" A reasonable juror could have found from the testimony outlined above that M.Y.'s ability to appraise the nature of or control her conduct was substantially impaired. *Hansing*, 2019-Ohio-739, at ¶ 13-14.

{¶20} We turn next to the question of whether there was sufficient evidence that Mr. Samamra knew or should have known that M.Y. was substantially impaired. *Id.* at ¶ 14. Mr. Samamra provided M.Y. with six of the eight alcoholic beverages that she consumed prior to engaging in sexual conduct with her. M.Y. testified that she was so intoxicated after consuming these drinks that she did not know what was going on during her interaction with Mr. Samamra.

Other witnesses described her condition as intoxicated with noticeable signs of impairment such as difficulty getting to the bathroom, slurred speech, bloodshot eyes, and emitting an odor of alcohol after the incident. Mr. Samamra was able to observe M.Y.'s condition before and during their sexual conduct.

{¶21} Accordingly, we conclude that the evidence, when viewed in the light most favorable to the State, could convince the average mind beyond a reasonable doubt that M.Y. was substantially impaired and that Mr. Samamra knew or should have known she was substantially impaired. R.C. 2907.03(A)(2). *Compare State v. Castaneda*, 2019-Ohio-4389, ¶ 16 (9th Dist.) (Testimony showed the victim was intoxicated, but evidence of substantial impairment insufficient where neither the victim nor any witnesses testified that the victim exhibited any signs of intoxication such as slurred speech; evidence also insufficient that the defendant knew or should have known the victim was substantially impaired because they did not drink together at the party and he was not present when she got sick.).

### Unlawful Sexual Conduct With A Minor

{¶22} R.C. 2907.04(A) prohibits unlawful sexual conduct with a minor and provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶23} The State acknowledged that Mr. Samamra did not know M.Y.'s age and pursued a conviction solely on the basis that he acted recklessly in regard to whether M.Y. was 13 years of

age or older but under 16 years of age when he engaged in sexual conduct with her. Mr. Samamra argues on appeal that the State failed to present sufficient evidence that he acted recklessly with regard to M.Y.'s age. Mr. Samamra points to the fact that he had never met M.Y. prior to the party and reasonably assumed she was 17 or 18 because he was told the attendees were G.B.'s classmates and friends, and M.Y. did not look or act younger than 16. We disagree.

{¶24} During cross-examination of M.Y., the defense introduced two photographs of M.Y., screenshots from M.Y.'s Instagram page that she posted the day after the party. According to M.Y., the photographs accurately depicted what she looked like at that time. In addition, Mr. Samamra testified that he understood "[G.B.'s] classmates and friends" would be in attendance at the party. He confirmed that fact again on cross-examination by the State.

{¶25} This case is similar to *State v. Young*, 2005-Ohio-3584 (8th Dist.). In *Young*, the defendant, age 24, maintained she was not reckless as to the victim's age because the victim did not look like he was 15. The victim was taller and had a deeper voice than his male companion who was 16, therefore, the defendant assumed the victim was at least 16. The Eighth District concluded that the trial court did not err in denying the defendant's Crim.R. 29 motion for acquittal, reasoning that the defendant's mere assumptions were not enough to overcome a finding of recklessness under these circumstances. *Id.* at ¶ 18. In so concluding, the Eighth District stated:

> "when you're hanging around with boys that are sophomores in high school, not everybody's going to be 16. Some are going to be 15, some are going to be 16, some are driving, some aren't driving. The question is whether [the defendant] had responsibility to figure that out before she did what she did."
>
> . . .
>
> Defendant was knowingly socializing with high school students. She knew [the defendant's male companion] was only 16 and had never met the victim before . . . . The victim did not say he was 16 or older. The victim did not try to conceal his age from anyone. The subject of age was never discussed. Nonetheless, defendant

engaged in sexual conduct with the victim without making any attempt to ascertain his age (and/or to verify her assumption that he was 16 or older).

*Id*. at ¶ 7, 19. *See also State v. Hahn*, 2003–Ohio–788 (4th Dist.) (upholding conviction where offender engaged in consensual sexual conduct with minor he had just met, knew nothing about, but thought was 16 or 17).

{¶26} Similarly, here Mr. Samamra was knowingly socializing with high school students. Mr. Samamra does not allege that M.Y. said she was 16 or older or that she tried to conceal her age. The record does not reflect that he ever inquired about her age nor that it was otherwise discussed. Nonetheless, Mr. Samamra engaged in sexual conduct with her without making any attempt to ascertain her age or to verify his assumption that she was 17 or 18 and a senior in high school.

{¶27} Accordingly, based on the foregoing, we conclude that the evidence, when viewed in the light most favorable to the State, could convince the average mind beyond a reasonable doubt that Mr. Samamra acted recklessly in regard to whether M.Y. was 13 years of age or older but under 16 years of age when he engaged in sexual conduct with her.

{¶28} Mr. Samamra's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶29} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.

1986). A reversal on this basis is reserved for an exceptional case in which the evidence weighs heavily against the conviction. *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

{¶30} It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus,* 2020-Ohio-4455, ¶ 57 (9th Dist.). *See also Prince v. Jordan*, 2004-Ohio-7184, ¶ 35 (9th Dist.) ("the jury is free to believe all, part, or none of the testimony of each witness."). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶31} Mr. Samamra argues that his convictions are against the manifest weight of the evidence generally because M.Y. was not credible and her testimony was impeached. He points to the following in support of his argument: M.Y. denied looking at pornography on her phone but later admitted it when she realized the police made a digital copy of her phone; M.Y. claimed at trial that she no longer speaks offensively on her social media posts when her current posts reflect that she still does; M.Y. was using her phone and texting her friends the entire night but never asked for help or called 911; M.Y. voluntarily remained in the bedroom, never attempted to leave, and did not tell Mr. Samamra to stop.

{¶32} Regarding the sexual battery conviction specifically, Mr. Samamra argues that none of the witnesses who testified actually saw M.Y. consuming alcohol, and he denies giving her drinks, therefore, the weight of the evidence does not support the conclusion that M.Y. was substantially impaired. He further argues that even if M.Y. had been substantially impaired, the weight of the evidence does not support the conclusion that Mr. Samamra knew or should have known of her impairment. Mr. Samamra points to M.Y.'s own testimony that despite whatever

alcohol she may have consumed, she was fully functional mentally and physically because she was able to use her phone to text with her friends and provide details of her location, was completely aware of her actions at all times, remembered everything, and even told the nurse who conducted her sexual assault exam that although she was drunk, she "knew what happened."

{¶33} Regarding the conviction for unlawful sexual conduct with a minor, Mr. Samamra maintains that the weight of the evidence does not establish that he was reckless as to M.Y.'s age. He points to the following evidence in support of his argument: Mr. Samamra believed everyone at the party was 17 or 18 years old; M.Y. was consuming alcohol and the lawful drinking age is 21; M.Y. was vaping and had nose piercings which he believed were not permitted until the age of 18; M.Y. was wearing high heels and had her make-up professionally done; M.Y. was watching porn on her phone; and M.Y. engaged in an adult conversation with him about Palestine, food, and sexually mature topics.

{¶34} We disagree with Mr. Samamra. The jury heard the testimony and viewed the exhibits. Generally credibility determinations are for the trier of fact because "a trier of fact enjoys the best position to assess the credibility of witnesses." *Tyus,* 2020-Ohio-4455, at ¶ 57. Although there was testimony on both sides as to whether M.Y. had been drinking and was substantially impaired, the jury is best positioned to decide which version to believe. The jury also heard Mr. Samamra explain his beliefs about M.Y.'s condition and age. Here, the jury chose to believe the State's version of the events over Mr. Samamra's version. Generally, "this Court will not overturn [a jury's] verdict on a manifest weight of the evidence challenge simply because the [jury] chose to believe certain witnesses' testimony over the testimony of others." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.). Mr. Samamra has not established that this is an exceptional case that requires this court to overturn the jury's finding of credibility.

**{¶35}** After a thorough review of the entire record, we conclude that this is not an exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice requiring a reversal of Mr. Samamra's convictions for sexual battery and unlawful sexual conduct with a minor. *See Otten*, 33 Ohio App.3d at 340*; Thompkins*, 78 Ohio St.3d at 387. Mr. Samamra's manifest weight of the evidence argument is overruled.

**{¶36}** Mr. Samamra's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**ALLOWING A STATE'S WITNESS TO TESTIFY REMOTELY BECAUSE SHE WAS ON VACATION AND OVER APPELLANT'S OBJECTION VIOLATED HIS RIGHT TO A FAIR TRIAL, DUE PROCESS, AND TO CONFRONT WITNESSES AGAINST HIM IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.**

**{¶37}** The day before trial, the State filed a motion to allow a witness, L.E., to testify remotely via Zoom. L.E. was on vacation and not available in person on the day the State presented its case. Mr. Samamra responded in opposition. On the first day of trial, prior to the presentation of the evidence, the trial court conducted a hearing on the motion and ruled provisionally that L.E. would be permitted to testify by Zoom provided there was a reliable wi-fi connection, and failing the same, L.E. would be called out of order three days later when she was back from vacation. During trial and prior to the L.E.'s testimony, Mr. Samamra's counsel renewed his objection. Once again, the trial court ruled that it would allow L.E.'s Zoom testimony provided there was a reliable connection. During L.E.'s testimony, she stated on two occasions that she could not hear the question due to a lost connection and asked that the question be repeated. In both instances, after hearing the question again, L.E. answered and proceeded with her testimony.

{¶38}   Mr. Samamra argues that the trial court erred and abused its discretion by admitting L.E.'s Zoom testimony over his objection in violation of his right to confront witnesses against him under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

{¶39}   The Confrontation Clause encompasses the right to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination.  *See Maryland v. Craig*, 497 U.S. 836, 845-846 (1990).   In *Craig*, the Supreme Court of the United States ("SCOTUS") held that this right is not absolute, is case-specific, and "must occasionally" give deference to public policy "where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  *Id*. at 849, 850.

{¶40}   As the Supreme Court of Ohio ("SCO") recently pointed out, in a case subsequent to *Craig*, *Crawford v. Washington*, 541 U.S. 36 (2004), the SCOTUS cast doubt on its holding in *Craig* and held that the Confrontation Clause "prohibited the use of out-of-court statements that are testimonial in nature[,]" and "rejected reliance on public-policy concerns and indicia of reliability in the Confrontation Clause analysis[.]"  *State v. Carter*, 2024-Ohio-1247, ¶ 30.   The SCO in *Carter* pointed out that *Crawford* "identified the right to confront the accused 'face to face' as central to the confrontation right" and "'decline[d] to mine the record in search of indicia of reliability.'" *Id*.  The *Carter* Court further noted that although *Crawford* did not overrule or even discuss *Craig*, it "rejected the interest-balancing approach employed in [*Craig*]" and overruled a case that *Craig* heavily relied on, *Ohio v. Roberts*, 448 U.S. 56 (1980).  *Id*. at 30-31.

{¶41}   The *Carter* Court ultimately declined to attempt to resolve the tension between *Craig* and *Crawford* and utilized the *Craig* balancing test, noting that SCOTUS had not overruled *Craig*.  *Id*. at ¶ 35.  In *Carter*, the State requested that the witness be permitted to testify remotely

because of COVID and uncertain weather conditions. *Id*. at ¶ 12. The trial court granted the State's request over the defendant's objection. The *Carter* Court concluded that the trial court erred by allowing the witness to testify remotely without making an adequate "case-specific-finding" based on evidence presented by the parties that "an exception to face-to-face confrontation is 'necessary to further an important state interest' or 'public policy' objective." *Id*. at ¶ 36. In the final analysis, however, the *Carter* Court held that the trial court's error was harmless because even without the witness's testimony, the remaining evidence at trial overwhelmingly supported the defendant's convictions. *Id*. at ¶ 49.

{¶42} Similarly, here Mr. Samamra argues that the safeguards of the Confrontation Clause were not adequately addressed in his case because the trial court did not make individualized findings of necessity when it denied him face to face confrontation with L.E. and where the wi-fi connection failed several times. Assuming without deciding the trial court erred in allowing the witness to appear by video feed, we conclude that any potential erroneous admission was harmless in light of the formidable other testimony and evidence against him, outlined above under Mr. Samamra's first and second assignments of error. Furthermore, the testimony of L.E. was duplicative of the testimony of G.B., M.Y., and Mr. Samamra in large part, and did not introduce any new evidence on substantive elements of the crimes charged.

{¶43} Mr. Samamra's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE COURT ABUSED ITS DISCRETION BY EXCLUDING IMPEACHMENT EVIDENCE AND FINDING THE CCDCFS RECORDS DID NOT CONTAIN EVIDENCE MATERIAL TO THE DEFENSE.**

**Social Media Posts**

**{¶44}** During M.Y.'s testimony, Mr. Samamra's counsel objected to the trial court's ruling that prohibited the introduction of certain of M.Y.'s recent social media posts as impeachment evidence. Mr. Samamra's intention in seeking to introduce that evidence was to impugn M.Y.'s credibility by proving that she still speaks in a vile manner on social media in contradiction of her testimony that she is embarrassed and disgusted by the way she used to comment on social media and no longer does that.

**{¶45}** The basis of the trial court's ruling excluding the exhibits was that they violated the rape shield law and/or were too prejudicial because they referenced M.Y.'s drug use. Defense counsel proffered the excluded exhibits, marked as Defense Exhibits C, D, and E, to preserve the alleged error. The trial court did permit the introduction of one of M.Y.'s recent social media posts, Defense Exhibit F, during cross-examination of M.Y.

**{¶46}** The admission or exclusion of evidence is within the discretion of the trial court. *State v. Robb*, 88 Ohio St.3d 59, 68 (2000). The appellate court will not reverse a trial court's ruling regarding the admissibility of evidence "absent an abuse of discretion and a showing of material prejudice by the opposing party." *State v. Gaskins,* 2007-Ohio-4103, ¶ 32 (9th Dist.). An abuse of discretion connotes that a trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore,* 5 Ohio St. 217, 219 (1983). Mr. Samamra maintains that the trial court abused its discretion when it excluded the proffered exhibits, resulting in material prejudice to the defense because the jury would have been less inclined to believe M.Y. had they been able to consider them.

**{¶47}** Exhibit E, one of the excluded exhibits, is a photo of M.Y. that was posted on her TikTok page and is captioned "waking up n[a]ked in a trap house next to a stranger[.]" The trial

court excluded it on the basis of the rape shield law because it referenced M.Y. sleeping with someone other than Mr. Samamra, which the trial court found was barred by the rape shield law, R.C. 2907.02(D). Mr. Samamra argues that the post did not violate the rape shield law because it did not involve "sexual activity" in the first instance as required by R.C. 2907.02. However, other than merely citing to R.C. 2907.01 and an Ohio Supreme Court case for the definition of "sexual activity," Mr. Samamra makes no argument as to how the language contained in Exhibit E is excluded by the definition of "sexual activity" under R.C. 2907.01(C). His single statement is his only argument. Similarly, Mr. Samamra makes no argument regarding the trial court's exclusion of Exhibits C and D other than to state that it was error to exclude them. Therefore, his arguments regarding the exclusion of Exhibits C, D, and E will not be considered. *State v. Franks*, 2017-Ohio-7045, ¶ 16 (9th Dist.) ("Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him.").

{¶48} Accordingly, we find no abuse of discretion in the trial court's exclusion of the proffered exhibits.

### Children's Services Records

{¶49} Mr. Samamra moved to compel M.Y.'s confidential Cuyahoga County Children and Family Services ("CCDCFS") records. The State did not object. After conducting an in camera review of the records, the trial court found that they did not contain any evidence material to the defense. Mr. Samamra's counsel objected to the trial court's ruling and requested that a copy be placed under seal for appellate review. The basis of Mr. Samamra's objection was that the records related to M.Y.'s drug and alcohol use and tumultuous home life, and therefore, constituted relevant rebuttal evidence.

{¶50} In *In re J.W.*, 2011-Ohio-3744 (9th Dist.), this Court stated as follows regarding the release of confidential records:

> a defendant's right to a fair trial "entitle[s] the defendant to an in camera review by the trial court of . . . confidential records in order to determine whether the records contain evidence material to the accused's defense." Following several other districts, it held that "[t]he proper procedure in determining the availability of confidential records is for the trial court to conduct an in camera inspection to determine: (1) whether the records are necessary and relevant to the pending action; (2) whether good cause has been shown by the person seeking disclosure; and (3) whether their admission outweighs the confidentiality considerations."

*Id*. at ¶ 7. Thus, the confidentiality of records under R.C. 5153.17 is not absolute. *State ex rel. Renfro v. Dept. of Human Serv.*, 54 Ohio St.3d 25, 29 (1990). "Material" evidence is that which goes to "the substance of the allegations" against a defendant, evidence the defendant would have used to acquit himself of the specific charges leveled against him. *State v. Geeslin*, 2007-Ohio-5239, ¶ 13.

{¶51} Mr. Samamra's argument is that M.Y.'s CCDCFS records contain evidence that could impeach M.Y. and undermine the convictions. He references R.H.'s testimony during the State's case that M.Y. had a "troubled scenario[,]" and argues that to the extent the CCDCFS records contain similar information about M.Y. that could impeach her, the trial court erred by finding them to be not material. We disagree.

{¶52} Upon our own review of the CCDCFS records, we conclude that the trial court did not abuse its discretion in determining that they were not material to Mr. Samamra's defense because the records do not go to the "substance of the allegations" against him. *Geeslin*, 2007-Ohio-5239, at ¶ 13. Mr. Samamra's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V

**APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED AND HE WAS DEPRIVED OF A FAIR TRIAL WHEN THE ORDER FOR SEPARATION OF WITNESSES WAS VIOLATED.**

{¶53} During the testimony of the State's witness, R.H., the trial court discovered that another witness, G.B., who had already testified, was in the courtroom in violation of the separation of witnesses' order. The trial court interrupted R.H.'s testimony to remove G.B. from the courtroom.

{¶54} Mr. Samamra argues that the trial court abused its discretion by allowing R.H. to testify without taking any curative measures to remedy the failure to abide by the separation order beyond removing G.B. from the courtroom. Mr. Samamra contends that the trial court should have inquired of R.H. whether G.B.'s presence influenced her testimony to determine if any portion of R.H.'s testimony should have been stricken. He argues there is a reasonable probability that R.H.'s testimony was tainted because G.B. is her daughter and R.H. may have felt pressure to corroborate G.B.'s testimony. Mr. Samamra submits that he was deprived of a fair trial because of the trial court's failures. We disagree.

{¶55} First, Mr. Samamra did not raise this issue in the trial court. His counsel did not object to G.B.'s presence nor request that any portion of R.H.'s testimony be stricken or move for a mistrial. Therefore, Mr. Samamra is limited to a plain error argument. "Pursuant to Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Horne*, 2011-Ohio-1901, ¶ 24 (9th Dist.). However, Mr. Samamra has not developed a plain error argument on appeal. This Court will not develop one on his behalf. *State v. Piatt*, 2020-Ohio-1177, ¶ 25 (9th Dist.).

{¶56} Mr. Samamra also argues ineffective assistance of counsel under this same assignment of error. However, appellate courts review assignments of error, not mere arguments. App.R. 12(A)(2) provides that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to . . . argue the assignment separately in the brief, as required

under App.R. 16(A)." *See In re C.M.*, 2007-Ohio-3999, ¶ 53 (9th Dist.) ("Pursuant to Rule 12(A)(2) of the Ohio Rules of Appellate Procedure, this Court is only obligated to consider errors separately argued.").

**{¶57}** Mr. Samamra's ineffective assistance of counsel argument was not raised as a separate assignment of error. His captioned fifth assignment of error does not include this argument. Because Mr. Samamra's ineffective assistance of counsel argument goes beyond the scope of his captioned assignment of error, this Court declines to address it.

**{¶58}** Mr. Samamra's fifth assignment of error is overruled.

III.

**{¶59}** Based on the foregoing, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOSEPH V. PAGANO, Attorney at Law, for Appellant.

TONY CILLO, Prosecuting Attorney, and MARK ANTHONY KOZA, Assistant Prosecuting Attorney, for Appellee.